IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NANCY S. and S.S.,<br><br>　　　　　　Plaintiffs,<br>v.<br><br>ANTHEM BLUE CROSS AND BLUE SHIELD,<br><br>　　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:19-cv-00231-JNP-DAO<br><br>District Judge Jill N. Parrish |

　　　　Nancy S. and S.S. (Plaintiffs) sued their health insurance provider, Anthem Blue Cross and Blue Shield, based upon its denial of coverage for S.S.'s stay in a residential mental health treatment center. Plaintiffs assert two causes of action: (1) a claim for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) and (2) a claim that Anthem violated the Mental Health Parity and Addiction Equity Act of 2008 (Parity Act). Anthem moved to dismiss the Parity Act cause of action, arguing that Plaintiffs failed to plead facts sufficient to support this claim. [Docket 5]. The court DENIES the motion to dismiss.

**BACKGROUND**

　　　　S.S. is a minor covered by a health insurance plan provided by Anthem. S.S. has suffered from depression, anxiety, an eating disorder, chronic suicidal ideations, hallucinations, and substance abuse issues.

　　　　Anthem approved 21 days of treatment in Solstice, a residential mental health facility. On January 6, 2016, S.S. was admitted to Solstice. On January 26, 2016, Solstice contacted Anthem to schedule a peer to peer review of the medical necessity of further residential treatment. Anthem agreed to a peer to peer interview, and Solstice contacted S.S.'s clinical team to schedule an

1

interview time. But after business hours on January 27, 2016, Anthem contacted Solstice and stated that Anthem had decided to deny coverage for further treatment without engaging in the peer to peer review process. In a letter dated January 27, 2016, Anthem denied further coverage for S.S.'s treatment in the facility because it determined that the treatment was not medically necessary:

> You went to residential treatment for your mental health condition and your stay was approved. A request was made to extend your stay. The plan's clinical criteria considers [sic] ongoing care medically necessary when progress is being made toward treatment goals, or, if there is no progress, the treatment plan is being changed so that progress will be likely. The information we have tells us that progress toward treatment goals isn't occurring and your treatment plan hasn't been changed so that progress will be likely. For this reason, the request for you to remain in residential treatment is denied as not medically necessary. There may be options to help you continue your treatment, such as outpatient services. We encourage you to discuss these options with your doctor.

Nancy S. submitted an appeal from the denial of benefits to Anthem, which upheld its initial decision under the contradictory rationale that residential treatment was not medically necessary because S.S. had progressed enough during her 21-day stay that she was no longer at risk for serious harm:

> We reviewed all the information that was given to us before with the first request for coverage. We also reviewed all that was given to us for the appeal. Your doctor wanted you to stay longer in residential treatment center care. You were getting this because you had been at risk for serious harm without 24 hour care. We understand that you would like us to change our first decision. Now we have new information from the medical record plus letters. We still do not think this is medically necessary for you. We believe our first decision is correct for the following reason. After the treatment you had, you were no longer at risk for serious harm that needed 24 hour care. You could have been treated with outpatient services.

Nancy S. then requested that Anthem's denial of coverage be evaluated by an external review agency. The external reviewer upheld the denial of benefits, stating: "Residential mental health treatment from 1/27/16 to present for this member was not medically necessary." The reviewer did

not clarify whether the medical necessity determination was based upon the lack of progress toward treatment goals or whether it was based upon evidence of enough progress that S.S. no longer required 24-hour care.

Nancy S. and S.S. sued Anthem, asserting two causes of action: (1) a claim for benefits under ERISA and (2) a claim that Anthem violated the Parity Act by evaluating a request for coverage of mental healthcare treatment under a more stringent standard than it would apply to a request for coverage for other types of healthcare. Anthem moved to dismiss the Parity Act claim, arguing that Plaintiffs did not allege facts sufficient to support liability.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "The burden is on the plaintiff to 'frame a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma ex rel. Dept. of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). The allegations in the complaint must be "more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Id.* (citation omitted). In addition, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). In other words, once a plaintiff adequately states a claim for relief, he or she "must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (alteration in original) (citation omitted).

## ANALYSIS

Anthem argues that Plaintiffs failed to state a claim for violation of the Parity Act. It contends that the complaint does not allege facts showing that it denied coverage for S.S.'s

3

residential mental health treatment using a more stringent standard than it would apply to claims for coverage for surgical or other medical treatments. In other words, Anthem asserts that Plaintiffs did not plead facts demonstrating an improper disparity in coverage for mental healthcare services.

The court first addresses the legal standard for pleading a Parity Act claim. The court then applies this standard to facts pled in the complaint.

### I. PARITY ACT LEGAL FRAMEWORK

The Parity Act, codified at 29 U.S.C. § 1185a, is an amendment to ERISA enforced by seeking equitable relief through Section 502(a)(3) of that Act. *See Christine S. v. Blue Cross Blue Shield of New Mexico*, No. 2:18-cv-00874-JNP-DBP, 2019 WL 6974772, at *6 (D. Utah Dec. 19, 2019). Among other provisions, the Parity Act requires that an ERISA benefits plan "providing for 'both medical and surgical benefits and mental health or substance use disorder benefits' must not impose more coverage restrictions on the latter than it imposes on the former." *Id.* (quoting 29 U.S.C. § 1185a(a)(3)(A)). This parity requirement takes two forms: (1) plan administrators may not apply treatment limitations to mental health benefits that are more restrictive than "the predominant treatment limitations applied to substantially all medical and surgical benefits" and (2) plan administrators may not apply "separate treatment limitations" only to mental health benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii). As this court recently stated, "[i]n effect, the Parity Act prevents insurance providers from writing or enforcing group health plans in a way that treats mental and medical health claims differently." *David S. v. United Healthcare Ins. Co.*, No. 2:18-cv-00803-RJS, 2019 WL 4393341, at *3 (D. Utah Sept. 13, 2019) (citing *Munnelly v. Fordham Univ. Faculty*, 316 F. Supp. 3d 714, 728 (S.D.N.Y. 2018) ("Essentially, the Parity Act requires ERISA plans to treat sicknesses of the mind in the same way that they would a broken bone")).

The Parity Act implementing regulations target and prohibit specific unequal "treatment limitations." *See* 29 C.F.R. § 2590.712; *see also* 29 U.S.C. §§ 1185a(a)(3)(A)(ii)–(B)(iii) (defining "treatment limitations"). Treatment limitations include "both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year), and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits for treatment under a plan or coverage." 29 C.F.R. § 2590.712(a). Nonquantitative treatment limitations on mental health benefits include "[m]edical management standards limiting or excluding benefits based on medical necessity or medical appropriateness" and "[r]efusal to pay for higher-cost therapies until it can be shown that a lower-cost therapy is not effective (also known as fail-first policies or step therapy protocols)." *Id.* § 2590.712(c)(4)(ii). The Parity Act regulations further specify that all "processes, strategies, evidentiary standards, or other factors used in applying" nonquantitative treatment limitations are subject to the statute's parity requirements. *Id.* § 2590.712(c)(4)(i). The parity comparison must be between mental health/substance abuse and medical/surgical care "in the same classification," and the regulations list six classifications: (1) inpatient, in-network; (2) inpatient, out-of-network; (3) outpatient, in-network; (4) outpatient, out-of-network; (5) emergency care; and (6) prescription drugs. *See id.* § 2590.712(c)(2)(ii)(A) & (4)(i).

Treatment limitations are not necessarily evident on the face of an insured's plan terms and may be imposed during a claims administrator's application of the plan to a given claim for benefits or type of treatment coverage in a specific case. Therefore, plaintiffs often must plead "as-applied" challenges to enforce their Parity Act rights when a disparity in benefits criteria occurs in application rather than in the plan terms. *See, e.g.*, *Michael D. v. Anthem Health Plans of Kentucky, Inc.*, 369 F. Supp. 3d 1159, 1175 (D. Utah 2019) (permitting as-applied Parity Act challenge); *Kurt*

*W. v. United Healthcare Ins. Co.*, No. 2:19-cv-00223-CW, 2019 WL 6790823, at *4 (D. Utah Dec. 12, 2019) (same); *David S.*, 2019 WL 4393341, at *4 (same).

As the court has recently discussed, the Tenth Circuit has not promulgated a test to determine what is required to state a claim for a Parity Act violation, and district courts have presented varying analyses. *See, e.g.*, *Michael D.*, 369 F. Supp. 3d at 1174–75 (discussing different pleading standards). In the absence of any concrete guidance, this court has adopted a three-part analysis. *David P. v. United Healthcare Ins. Co.*, No. 2:19-cv-00225-JNP-PMW, 2020 WL 607620, at *15 & n.12 (D. Utah Feb. 7, 2020). Under this test, "Parity Act plaintiffs must (1) identify a specific treatment limitation on mental health benefits, (2) identify medical/surgical care covered by the plan that is analogous to the mental health/substance abuse care for which the plaintiffs seek benefits, and (3) plausibly allege a disparity between the treatment limitation on mental health/substance abuse benefits as compared to the limitations that defendants would apply to the covered medical/surgical analog." *Id.* at *15.

## II. APPLICATION OF THE LEGAL FRAMEWORK TO THE FACTS PLED IN THE COMPLAINT

### A. Treatment Limitation

Plaintiffs must first identify a treatment limitation that Anthem imposed on the type of mental health care that S.S. received. Under Parity Act regulations and a long list of this court's prior decisions, plaintiffs do not need to identify a specific unequal limitation in the terms of their benefits plan and can pursue "as-applied" challenges. *See* 29 C.F.R. § 2590.712(c)(4)(i); *Michael W. v. United Behavioral Health*, No. 2:18-cv-00818-JNP, 2019 WL 4736937, at *18 (D. Utah Sept. 27, 2019). Plaintiffs must only demonstrate that the defendant imposed "a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits . . . under the terms of the plan (or health insurance coverage) as written *and in operation*" through "any

6

processes, strategies, evidentiary standards, or other factors" that "*are applied* . . . more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits." 29 C.F.R. § 2590.712(c)(4)(i) (emphasis added). Indeed, the Parity Act regulations recognize multiple examples where a plan's facially equal treatment limitations may "in practice" violate the Parity Act. *See id.* § 2590.712(c)(4)(iii), ex. 1, 3, & 5.

Plaintiffs have clarified in their response brief that they are asserting an as-applied challenge under the Parity Act. The complaint alleges that Anthem applied the terms of the benefit plan so as to limit coverage of mental health care treatment. Specifically, Plaintiffs allege that Anthem determined that residential treatment was not medically necessary because S.S. was not progressing in her treatment plan after only 21 days of treatment. Accordingly, Plaintiffs have identified a limitation to the coverage of mental health treatment.

B. *Analogous Covered Medical/Surgical Care*

Second, Plaintiffs must identify medical/surgical care that is covered by the plan and is analogous to the mental health care S.S. received. The complaint alleges that the medical/surgical analogs to residential mental health care include "sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities."

As this court recently recognized in *Kurt W. v. United Healthcare Insurance Co.*:

> The Final Rules under the Parity Act state, in no uncertain terms, that "[b]ehavioral health intermediate services are generally categorized in a similar fashion as analogous medical services; for example, residential treatment tends to be categorized in the same way as skilled nursing facility care in the inpatient classification" and that "if a plan or issuer classifies care in skilled nursing facilities or rehabilitation hospitals as inpatient benefits, then the plan or issuer must likewise treat any covered care in residential treatment facilities for mental health or substance user disorders as an inpatient benefit."

7

No. 2:19-cv-00223-CW, 2019 WL 6790823, at *5 (D. Utah Dec. 12, 2019) (quoting Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008; Technical Amendment to External Review for Multi–State Plan Program, 78 Fed. Reg. 68,247 (Nov. 13, 2013) ("Final Rules")); *see also Danny P. v. Catholic Health Initiatives*, 891 F.3d 1155, 1158 (9th Cir. 2018) (agreeing that "coverage at residential treatment facilities must, indeed, be like the coverage at skilled nursing facilities"). This court has also analogized mental health/substance abuse residential treatment centers to medical/surgical inpatient hospice and rehabilitation facilities. *See D.K. v. United Behavioral Health*, No. 2:17-cv-01328-DAK, 2020 WL 262980, at *4 (D. Utah Jan. 17, 2020); *Michael W.*, 2019 WL 4736937, at *19; *Timothy D. v. Aetna Health & Life Ins. Co.*, No. 2:18-cv-00753-DAK, 2019 WL 2493449, at *4 (D. Utah June 14, 2019).

Here, Plaintiffs' complaint identifies the analogous covered medical/surgical treatment setting as a "skilled nursing facilities, inpatient hospice care, and rehabilitation facilities." Anthem does not dispute that it covers these medical treatments. Accordingly, as established in prior cases before this court, Plaintiffs have sufficiently identified the relevant medical/surgical analog covered by Anthem.

C. As-Applied Disparity

Third, Plaintiffs must plausibly allege a disparity between the treatment limitation applied to S.S.'s metal health care as compared to the treatment limitations applied to the covered medical/surgical analog. *See, e.g.*, *Timothy D.*, 2019 WL 2493449, at *3–4. Plaintiffs assert in their complaint that Anthem does not apply a 21-day time limit when determining whether medical or surgical treatments are effective:

> Specifically, Anthem's determination that treatment to effectively address S.'s mental health and substance use disorders at Solstice was not medically necessary after only three weeks of care, despite

8

> the recommendations of her treatment team and in a way that conflicted with generally accepted standards of care was inconsistent with the manner in which Anthem evaluates the medical necessity for treatment of medical and surgical treatment provided at intermediate levels of care.

Anthem argues that Plaintiffs do not allege sufficient facts to support their conclusion that Anthem applies its medical necessity criteria more stringently to mental health residential treatment than it does to other types of inpatient health care treatment. In essence, Anthem asserts that Plaintiffs have not specifically alleged the precise treatment limitation that it applies to inpatient medical/surgical care. Anthem also contends that Plaintiffs must be barred from conducting discovery to find out how Anthem applies its medical necessity criteria to these analogous medical treatments.

But the court recognizes that the Parity Act "counsels against a rigid pleading standard" because of the disparity of information between plaintiffs and defendants regarding the treatment limitations claims administrators apply to the analogous medical care that a plaintiff did not seek. *Michael W.*, 2019 WL 4736937, at *18; *see also Bushell v. UnitedHealth Grp. Inc.*, No. 17-cv-2021-JPO, 2018 WL 1578167, at *6 (S.D.N.Y. March 27, 2018). Indeed, this court has repeatedly acknowledged that Parity Act claims "generally require further discovery to evaluate whether there is a disparity between the availability of treatments for mental health and substance abuse disorders and treatment for medical/surgical conditions." *Michael W.*, 2019 WL 4736937, at *18 (quoting *Timothy D.*, 2019 WL 2493449, at *4); *see also Melissa P. v. Aetna Life Ins. Co.*, No. 2:18-cv-00216-RJS-EJF, 2018 WL 6788521, at *4 (D. Utah Dec. 26, 2018) (observing that "[d]iscovery will allow [the plaintiff] to learn and compare the processes, strategies, evidentiary standards, and other factors [the claims administrator] used for sub-acute care in both" mental and medical healthcare coverage contexts). Plaintiffs are not required to point to a specific criteria

9

Case 2:19-cv-00231-JNP-DAO   Document 29   Filed 05/26/20   Page 10 of 10

disparity with the precision Anthem proposes. Accordingly, Plaintiffs have adequately alleged a treatment limitation disparity based on the available information at this stage.

In sum, Plaintiffs have adequately pled their Parity Act claim because (1) they identified an as-applied limitation to S.S.'s residential mental health treatment; (2) they appropriately analogized to medical/surgical care at skilled nursing, inpatient hospice, or inpatient rehabilitation facilities; and (3) they plausibly alleged a disparity between how Anthem applies limitations to residential mental health care and inpatient medical/surgical care.

## CONCLUSION AND ORDER

For the foregoing reasons, Anthem's motion to dismiss is DENIED. [Docket 5].

Signed May 26, 2020

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge